| | |
|---|---|
| El Paso County District Court<br>270 Tejon Street<br>Colorado Springs, Colorado 80903 | DATE FILED: July 20, 2023<br>CASE NUMBER: 2023CV237 |
| Keith Dorman Smith<br>**Plaintiff**<br>V.<br>LABORATORY CORPORATION OF AMERICA HOLDINGS (LabCorp)<br>**Defendant**<br>and<br>Karl-Hans Wurzinger, Ph.D.<br>**Defendant** | FILED IN THE DISTRICT AND COUNTY COURTS OF EL PASO COUNTY, COLORADO<br>JUL 20 2023<br>SHERI KING<br>CLERK OF COURT<br><br>*This box is for court use only.* |
| **Filed by:**<br>Keith Dorman Smith, Pro Se<br>PO Box 64304<br>Colorado Springs, CO 80962<br>719-761-4480<br>KDormanSmith@gmail.com | Case Number: 23CV237<br>Division: _____<br>Courtroom: _____ |
| **Motion for Civil Actions & Remedies** ||

1. The Plaintiff resides in the county of El Paso, in the City and State of Colorado Springs, Colorado.

2. The Plaintiff is pursuing legal actions against the Defendants under Colo. Rev. Stat. § 13-80-101 and § 13-80-102 to seek the appropriate remedies for:

   a) Breach of Contract - *Montemayor v. Jacor Comm, 64 P.3d 916 (Colo. App. 2003)*;

   b) Negligence - *Moreland v. Board of County Commissioners, 725 P.2d 1 (Colo. App. 1985)*; and

   c) Fraud - *People v. Cleland, No. GC98B118 (Colo. Sep. 17, 1999)*.



### a) BREACH OF CONTRACT

i. July 21, 2021, in accordance with a court order issued by the El Paso County District Court to resolve a fraudulent paternity claim **(Exhibit A)**, Plaintiff contracted with the Defendants for independent genetic testing for Brittany Woods Gooley and her twin daughters **(Exhibit B)**.

Ms. Woods Gooley is a woman the Plaintiff does not know nor has ever been in any relationship with. However, Ms. Woods Gooley has falsely accused Plaintiff of fathering her twin daughters.

ii. Plaintiff paid the Defendants $615 for independent genetic testing for Ms. Woods Gooley and her twin daughters **(Exhibits E and F)**. The Defendants' representative acknowledged receipt of the $615 payment and provided the Plaintiff confirmation that they would contact Ms. Woods Gooley to schedule an appointment for specimen collection **(Exhibits C and D)**.

iii. However, the Defendants failed to render services as agreed upon. Ms. Woods Gooley testified in the Arapahoe County District Court that the independent genetic test had not been paid for. During her testimony, Ms. Woods Gooley summarized her conversation with a LabCorp representative, Elaine, as follows:

*"She let me know she couldn't say certain things due to HIPAA. However, she will let me know that she refunded your payment due to threats and due to making her feel uncomfortable of this entire situation, and now you can no longer even use LabCorp personally. That's what she told me".*

Ms. Woods Gooley continued to describe her conversation with the LabCorp representative as follows:

> *"She didn't feel bad. She was just really confused as to what was going on, and she didn't feel comfortable. I do not have a personal relationship with her. I do not know her outside of LabCorp. I basically called in to try to get information of a scheduled time and date for me to bring in the kids, and that's what she told me."*

Based on Ms. Woods Gooley's testimony, the Defendants violated the Plaintiff's rights under the Health Insurance Portability and Accountability Act.

iv. Plaintiff contacted LabCorp to inquire about the status of the independent genetic tests and was informed that no refund had been issued and that the independent genetic tests Plaintiff paid for were available for Ms. Woods Gooley and her children to complete.

v. Ms. Woods Gooley continued to have problems accessing the independent genetic tests resulting in the Arapahoe County District Court instructing parties to complete genetic testing at the Arapahoe County Child Support administrative office, a non-clinical environment.

## b) NEGLIGENCE

vi. LabCorp is an accredited laboratory certified by the Association for the Advancement of Blood & Biotherapies. Dr. Karl-Hans Wurzinger is the Laboratory Director of the Identity Testing Division at Laboratory Corporation of America (LabCorp). When performing genetic testing, the Defendants must comply with Colorado statutes, the Uniform Parentage Act (UPA), and LabCorp protocols and standards to produce court-admissible test results.

vii. Defendants breached their legal and professional duties when failing to comply with Colorado's statutes, UPA requirements, and LabCorp's protocols and standards when processing genetic tests initiated by the Arapahoe County Child Support Unit. Specifically, Defendants accepted and processed genetic specimen that was not collected at a certified collection site, used an unreliable collection method, ignored a breach in the chain of custody, did not actually use the documentation indicated on the chain of custody documents to identify the children, and compared an insufficient number of genetic markers.

**Collected at an Uncertified Collection Site** - The UPA requires that genetic specimen be collected in a clinical environment. However, the Defendants accepted specimens collected in the Arapahoe County Child Support administrative offices, witnessed by child support representatives who were not "lab-certified child support enforcement unit sample collectors" **(Exhibits I and J)**.

> *A delegate child support enforcement unit is authorized to produce, issue, and serve a subpoena to compel a party in a juvenile court case to appear, at a specified location and time, for a genetic test sample that is collected for assistance in paternity determination.* ***The subpoena must allow a lab-certified child support enforcement unit sample collector, an accredited genetic-testing laboratory company, a health clinic, or a hospital to conduct a buccal swab or other lab-approved collection method of the alleged father, mother, and child whose paternity is at issue.*** *The sample may then be used for paternity testing purposes, provided appropriate chain-of-custody documentation is followed. Test results obtained through the subpoena may be admitted as evidence pursuant to section 13-25-126. The subpoena may be served by first-class mail or by electronic means, if that notice preference by the party is documented.*
> Colo. Rev. Stat. § 19-4-112(2)(a)

**Collected Using an Unreliable Collection Method**

> *"The tests shall be conducted by a laboratory approved by an accreditation body designated by the secretary of the federal department of health and human services, utilizing any genetic test of a type generally acknowledged as reliable by such accreditation body."*
> Colo. Rev. Stat. § 13-25-126(1)(b)

LabCorp describes the genetic test they rely on to produce court-admissible test results as:

> *"Legal, court-admissible cases require a chain of custody of the sample, **which must be drawn from an approved LabCorp collection site**. When DNA test results will be used for legal purposes, such as child support, social security, or custody matters, "legal" DNA tests are required."*

However, the Defendants accepted genetic specimen collected at the Arapahoe County Child Support office when the parties **self-swabbed** themselves in a non-clinical environment. This collection method is equivalent to LabCorp's "home tests," which, according to LabCorp's standards, is not used for legal purposes.

**Compromised Chain of Custody** - The Defendants accepted a specimen where the chain of custody was broken when Ms. Woods Gooley was allowed to wear a mask to conceal her identity. The intent of the Colorado statute that requires photos to be part of the chain of custody is to be able to identify the party from whom the specimen was collected. However, there is no assurance that the person from whom the specimen was taken is Ms. Woods-Gooley **(Exhibit I).** Colorado's law requires:

> *Documentation from the testing laboratory of the following information is sufficient to establish a reliable chain of custody that makes genetic testing results admissible without testimony:(I)* **The names and photographs of the individuals from whom specimens have been taken.**
> Colo. Rev. Stat. § 13-25-126(1)(c)

### Chain of Custody Document Indicated Children's Birth Certificates were Used to Identify the Children, but these Documents were not Presented to the Uncertified Witnesses at the Time of Collection

Although the chain of custody documents indicates that the children's birth certificates were used for identification, Ms. Woods Gooley testified that she did not require to have the children's birth certificates since the Arapahoe County Child Support Unit already had these documents on file.

*"The birth certificates were presented and put into the file the day I went and opened up the child support case when I turned in all the paperwork. So they already had that stuff on file."*

If the children's specimen were collected in accordance with the UPA, Ms. Woods Gooley would have been required to produce the children's birth certificates – which are documents Ms. Woods Gooley has been allowed to conceal from the Plaintiff.

**Insufficient Marker Comparison** - The Defendants violated LabCorp's protocol for genetic test results when comparing only 18 markers for one child (**Exhibit G-page2**) and 20 markers for the other child (**Exhibit H-page 2**). LabCorp describes its testing standards as follows:

> *"Labcorp's premier DNA testing lab dedicated to identity testing has been solving genetic relationship puzzles for over three decades. Whether your DNA identity testing needs are standard or complex, you can depend on Labcorp to provide fast, affordable and reliable results. Many labs test sixteen or less loci (also known as genetic markers). However, Labcorp tests twenty-one loci, which provides a median*

> *combined paternity index of greater than one (1) billion to one (1) for standard cases."*

**Failure to disclose the limited use for the test results** - The Defendants failed to disclose in its report that the genetic test results initiated by the Arapahoe County Child Support Unit did not comply with the legal testing requirements and, therefore, could not be used as court-admissible evidence (**Exhibits G and H**).

viii. The Defendants failed to disclose in its Paternity Report that the tests were not completed in accordance with Colorado statutes, UPA requirements, and LabCorp's protocols and standards and, therefore, should not be used for legal purposes. As a result of the Defendant's negligence to provide a disclaimer that indicated the results are not intended to be used as court-admissible evidence, Defendants provided the Arapahoe County Child Support Unit genetic test results that showed the Plaintiff is the father of Ms. Woods Gooley's children, a woman the Plaintiff does not know nor has ever been in a relationship with.

## c) FRAUD

ix. There are two genetic tests in question in this case.

The first is the independent genetic test Plaintiff paid for, but for which LabCorp did not allow Ms. Woods Gooley to complete. This genetic test is discussed under the Breach of Contract section.

The second is the Arapahoe County Child Support Unit's genetic test which parties self-swabbed themselves in the child support administrative offices, witnessed by uncertified child support representatives. This genetic test did not comply with the UPA

requirements, Colorado's statutes, or LabCorp's protocols and standards. This genetic test is discussed under the Negligence section.

x. **Plaintiff's Independent Genetic Test**

   a. Defendants' representatives acknowledged and confirmed that Plaintiff paid for genetic testing for Ms. Woods Gooley and her children (**Exhibit E**).

   b. Defendants' representatives accessed Plaintiff's LabCorp account history and confirmed receipt of payment and requested documentation.

   c. Plaintiff relied on Defendants' representatives' assurance that paid genetic tests were available for Ms. Woods Gooley and her children to complete. The proof of payment could be substantiated by the receipt LabCorp sent the Plaintiff and the fact that Plaintiff never received a refund from LabCorp.

   d. July 2023, Plaintiff contacted LabCorp to inquire about the account status. LabCorp representatives verbally confirmed that the genetic tests were still available for Ms. Woods Gooley to complete, and no refund had been issued to the account.

   Plaintiff later received an email from LabCorp stating:

   *"I am unable to find patient information on the people listed below"*. (**Exhibit K – page 3**)

   e. Despite evidence that Plaintiff paid the Defendants for legal, independent genetic tests, Defendants denied Ms. Woods Gooley access to complete the independent genetic tests, and

there is no evidence that the Defendants refunded Plaintiff for payment. Instead of producing court-admissible genetic test results, the Defendants produced results that did not disclose their noncompliance with Colorado statutes, the UPA, and their protocols and standards resulting in Plaintiff being fraudulently named the father of Ms. Woods Gooley's children.

xi. **Arapahoe County Child Support Unit's Genetic Test**

   a. The Defendants used genetic specimen that did not comply with the collection method required by Colorado statutes, the UPA, and the Defendants' protocols and standards to generate paternity test results that falsely accused the Plaintiff of being the father of children from a woman he does not know nor has ever been in a relationship with.

   b. The Defendants knew the genetic specimen was not collected as required by Colorado's statutes, the UPA, and the Defendants' protocols and standards. The Defendants' failure and neglect have resulted in the Plaintiff being falsely named the father of Ms. Woods Gooley's children.

   c. Plaintiff relied on the Defendants to disclose that the genetic collection method did not comply with Colorado's statutes, the UPA, or the Defendants' protocol and standards. Therefore, the test results are not intended and should not be used as court-admissible evidence.

   d. The Defendants intentionally released genetic test results to the Arapahoe County Child Support Unit to defraud the Court into believing the Plaintiff is the father of Ms. Wood's Gooley children.

4. **Damages**

Due to the Defendants' breach of contract, negligence, and fraud, the plaintiff has suffered significant financial losses and non-financial injuries. The exact nature and extent of the damages will be presented during the trial. The plaintiff intends to seek appropriate remedies, including but not limited to specific performance, compensatory and punitive damages; reimbursement for any costs, fees, or expenses reasonably incurred to rectify the breach or mitigate damages and any additional relief deemed appropriate by the court to remedy the harm caused by the Defendants' breach of contract, negligence, and fraud.

5. **Certificate of Service**

I certify that on July 20, 2023, I gave a copy of this document to the other parties by certified mail, addressed to:

a. LABORATORY CORPORATION OF AMERICA HOLDINGS (LabCorp)
   Corporation Service Company
   900 W. Littleton Boulevard
   Littleton, CO 80120

b. LABORATORY CORPORATION OF AMERICA HOLDINGS (LabCorp)
   531 South Spring Street
   BURLINGTON, NC 27215

c. Karl-Hans Wurzinger, Ph.D.
   2731 Delaney Drive
   Burlington, NC 27215-5213

*[signature]* 7/20/23

Keith Dorman Smith
PO Box 64304
Colorado Springs, CO 80962
719-761-4480
KDormanSmith@gmail.com