IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-02077-PAB-MDB

KEITH DORMAN SMITH,

    Plaintiff,

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS (LabCorp), and
KARL-HANS WURZINGER, Ph.D.,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 10], filed by defendants Laboratory Corporation of America Holdings ("LabCorp") and Dr. Karl-Hans Wurzinger (collectively, the "defendants"). Plaintiff Keith Dorman Smith filed a response. Docket No. 27. Defendants filed a reply. Docket No. 37. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I.    BACKGROUND**[1]

Mr. Dorman Smith resides in El Paso County, Colorado. Docket No. 5 at 1. LabCorp is an accredited laboratory that conducts genetic testing. *Id*. at 3. Dr. Wurzinger is the laboratory director of LabCorp's identity testing division. *Id*.

---

[1] The facts below are taken from plaintiff's complaint, Docket No. 5, and are presumed to be true for purposes of ruling on defendants' motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

This matter arises out of genetic testing related to a paternity dispute in a state court case in Colorado. *See id*. at 2.[2] Brittany Woods Gooley, an individual who is not a party to this action, alleged in the state court case that Mr. Dorman Smith is the father of her twin daughters. *Id*. Mr. Dorman Smith claims that he has never been in "any relationship" with Ms. Woods Gooley and disputes that he is the father of the twin girls. *Id*.

On July 21, 2021, Mr. Dorman Smith paid LabCorp $615 for "independent genetic testing" for Ms. Woods Gooley and her twin daughters (the "Independent Test"). *Id*. A LabCorp representative acknowledged receipt of Mr. Dorman Smith's payment and informed him that LabCorp would contact Ms. Woods Gooley to schedule an appointment for the genetic testing. *Id*. However, Ms. Woods Gooley testified in the state court case that she called LabCorp to schedule an appointment and a LabCorp representative told her that LabCorp "refunded [Mr. Dorman Smith's] payment." *Id*. at 2-3. When Mr. Dorman Smith inquired about the status of the Independent Test with LabCorp, LabCorp informed him that "no refund had been issued and that the independent genetic tests Plaintiff paid for were available for Ms. Woods Gooley and her children to complete." *Id*. at 3. Yet, LabCorp "denied Ms. Woods Gooley access to complete the independent genetic tests." *Id*. at 8.

---

[2] It is unclear from the complaint whether the paternity case was instituted in the District Court for El Paso County, Colorado; the District Court for Arapahoe County, Colorado; or both courts. The complaint references a "paternity claim" in "El Paso County District Court." Docket No. 5 at 2. However, the complaint also references paternity proceedings in the "Arapahoe County District Court." *Id*. at 3. The Court finds that this discrepancy is irrelevant for the purposes of resolving the present motion.

"Ms. Woods Gooley continued to have problems accessing the independent genetic tests[,] resulting in the Arapahoe County District Court instructing [the] parties to complete genetic testing at the Arapahoe County Child Support administrative office, a non-clinical environment" (the "Arapahoe County Test"). *Id*. at 3. The genetic samples for the Arapahoe County Test were collected at the "Arapahoe County Child Support administrative offices, witnessed by child support representatives who were not 'lab-certified child support enforcement unit sample collectors.'" *Id*. at 4. The parties "self-swabbed themselves" to provide the samples. *Id*. at 5. Ms. Woods Gooley was allowed to wear a mask, which concealed her identity, and did not present the children's birth certificates during the specimen collection. *Id*. at 5-6.[3] Defendants "accepted and processed [the] genetic specimen" from the Arapahoe County Test. *Id*. at 4.

Mr. Dorman-Smith alleges that defendants "used an unreliable collection method, ignored a breach in the chain of custody . . ., and compared an insufficient number of genetic markers." *Id*. Specifically, defendants compared eighteen genetic markers for one child and twenty genetic markers for the other child. *Id*. at 6. Defendants provided "genetic test results" to the "Arapahoe County Child Support Unit" showing that "Plaintiff is the father of Ms. Woods Gooley's children." *Id*. at 7.

Mr. Dorman Smith asserts three claims against defendants: (1) breach of contract; (2) negligence; and (3) fraud. *Id*. at 1. The breach of contract claim relates to the Independent Test that "Plaintiff paid for, but for which LabCorp did not allow Ms. Woods Gooley to complete." *Id*. at 7. The negligence claim relates to the Arapahoe

---

[3] It is unclear from the complaint whether any LabCorp representatives were present for the specimen collection.

3

County Test. *Id*. at 7-8. The fraud claim appears to encompass both the Independent Test and the Arapahoe County Test. *See id*. at 7-9.

## II. LEGAL STANDARD

### A. <u>Motion to Dismiss</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to

dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B. *Pro Se* Plaintiff

A *pro se* plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  The "court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)).  Therefore, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110).  However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).  Because Mr. Dorman Smith is proceeding *pro se*,

the Court will construe his pleadings liberally without serving as his advocate. *See Hall*, 935 F.2d at 1110.

## III. ANALYSIS

Defendants argue that the Court should dismiss Mr. Dorman Smith's claims pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 10 at 1.[4] Defendants argue that plaintiff's claims based on the Arapahoe County Test are barred under the doctrine of absolute immunity. *Id*. at 4-6. Defendants also argue that plaintiff has failed to state a claim for fraud or breach of contract. *Id*. at 6-9.[5]

### A. Absolute Immunity

Defendants argue that they are entitled to absolute immunity for the negligence and fraud claims related to the Arapahoe County Test. *Id*. at 4-6. Defendants assert that absolute immunity extends "to those functions intimately related and essential to the judicial decision-making process," *id*. at 4 (quoting *Merrick v. Burns, Wall, Smith & Mueller, P.C.*, 43 P.3d 712, 714 (Colo. App. 2001)), and that court-appointed experts "have been afforded immunity for their evaluations and recommendations." *Id*. at 5 (quoting *Awai v. Kotin*, 872 P.2d 1332, 1336 (Colo. App. 1993)). Defendants state that the Colorado Court of Appeals has extended absolute immunity to experts because "[a]n expert would be hesitant to provide consultation . . . if he or she would be subject

---

[4] Both parties presume that Colorado law applies to plaintiff's state law claims. *See* Docket No. 10 at 6-10; Docket No. 27 at 7, 9, 11. Accordingly, the Court will operate under the same premise. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

[5] Defendants do not move to dismiss Mr. Dorman Smith's negligence claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Accordingly, the Court will not evaluate whether Mr. Dorman Smith has plausibly alleged the elements of a negligence claim under Colorado law.

to retaliatory lawsuits from litigants who disagree with the methods used by an expert in formulating his or her opinion." *Id*. (quoting *Merrick*, 43 P.3d at 715). Here, defendants argue that paternity testing is "an act essential and integral to part of the judicial process" and thus defendants are entitled to absolute immunity. *Id*. at 6 (quoting *Merrick*, 43 P.3d at 714).

Mr. Dorman Smith responds that defendants are not entitled to absolute immunity. Docket No. 27 at 12-13. Mr. Dorman Smith argues that "[a]cts committed with malice or corrupt motives – such a[s] producing fraudulent paternity reports to mislead the Court – are not protected by absolute immunity." *Id*. at 13.

Absolute immunity is a common law principle. *Gonzales v. Hushen*, 540 P.3d 1268, 1281 (Colo. App. 2023). The determination of "whether a party is entitled to absolute immunity is a question of law for the court." *Merrick*, 43 P.3d at 713. "In Colorado, absolute immunity has been extended to judges, prosecutors, witnesses, and other persons who perform official functions in the judicial process." *Hoffler v. Colo. Dep't of Corr*., 27 P.3d 371, 374 (Colo. 2001) (collecting cases). "The purpose behind a grant of absolute immunity is to preserve the independent decision-making and truthfulness of critical judicial participants without subjecting them to the fear and apprehension that may result from a threat of personal liability." *Gonzales*, 540 P.3d at 1281 (quoting *Stepanek v. Delta Cnty.*, 940 P.2d 364, 368 (Colo. 1997)); *see also Hoffler*, 27 P.3d at 373 ("The rationale behind this common-law immunity is to preserve the independent decision-making and truthfulness of critical judicial participants" (citation and internal quotations omitted)). Absolute immunity extends only to "those functions intimately related and essential to the judicial decision-making process."

*Gonzales*, 540 P.3d at 1281 (quoting *Merrick*, 43 P.3d at 714); *see also Awai*, 872 P.2d at 1335.  In determining whether a party is entitled to absolute immunity, a court should "consider the nature of the duties performed and whether such duties are an essential and integral part of the judicial process."  *Merrick*, 43 P.3d at 714.  The party claiming absolute immunity has the burden of showing that it is entitled to immunity.  *Churchill v. Univ. of Colo. at Boulder*, 285 P.3d 986, 1001 (Colo. 2012); *Awai*, 872 P.2d at 1337.

The Court finds that defendants are not entitled to absolute immunity at the motion to dismiss stage.  Defendants have failed to cite any case, and the Court's own inquiry found no cases in Colorado, where a court granted absolute immunity to a medical laboratory or doctor performing a paternity test.  Some courts in other states have found that court-appointed medical laboratories are entitled to absolute immunity for paternity testing, while other courts have declined to extend absolute immunity to medical laboratories.  *Compare Pertilla v. Genetic Design, Inc.*, 166 Misc. 2d 843, 844-45 (N.Y. Sup. Ct. 1995) (holding that court-appointed medical laboratory was entitled to "quasi-judicial" immunity in negligence action for performing court-ordered paternity testing); *Falcon v. Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1268, 1275 (Cal. Ct. App. 2014) (holding a medical laboratory that had a "contractual relationship" with the county court was entitled to the "litigation privilege" for paternity DNA testing, as well as the communication of the test results to the court), *with Miller v. Niblack*, 942 S.W.2d 533, 538-39 (Tenn. Ct. App. 1996) (holding that a medical laboratory that had a contract with the juvenile court was not entitled to "judicial immunity" for performing paternity testing); *Berman v. Lab'y Corp. of Am.*, 268 P.3d 68, 71 (Okla. 2011) (holding that

8

absolute immunity "provides no protection against negligent conduct in performing paternity tests" when "LabCorp tested the DNA of a completely different man").

Defendants are correct that Colorado courts have recognized that some court-appointed experts may be entitled to absolute immunity. *See Awai*, 872 P.2d at 1336 (collecting cases finding that "[c]ourt-appointed therapists have been afforded [absolute] immunity for their evaluations and recommendations"). However, the Colorado Court of Appeals has explained that "cases that recognize quasi-judicial immunity for court-appointed psychiatric examiners do so only when the examiner is appointed by and reports directly to the court" because, "[i]n effect, such an appointee acts as an officer of the court." *Dalton v. Miller*, 984 P.2d 666, 668 (Colo. App. 1999). Here, there are no allegations in the complaint suggesting that the state court appointed LabCorp to perform the paternity testing or that LabCorp acted as an officer of the court. Rather, the complaint indicates that the "Arapahoe County District Court instruct[ed] [the] parties to complete genetic testing at the Arapahoe County Child Support administrative office." Docket No. 5 at 3. It is unclear whether the state court or the child support office contracted with LabCorp to process the "genetic specimen." *See id*. at 4.[6]

Furthermore, Colorado courts have consistently stated that the purpose of absolute immunity is to "preserve the independent decision-making and truthfulness of

---

[6] Defendants urge the Court to grant absolute immunity based on the Colorado Court of Appeals' decisions in *Awai* and *Merrick*. *See* Docket No. 10 at 4-6. However, the Court finds that those decisions are distinguishable. In *Awai*, the court discussed absolute immunity for "[c]ourt-appointed therapists." *Awai*, 872 P.2d at 1336. In *Merrick*, the court found that a malpractice expert witness was entitled to absolute immunity for preparing "at the trial court's direction" and filing with the court a "Statement of Review." *Merrick*, 43 P.3d at 713-14. Here, there are no allegations that the state court appointed LabCorp or specifically directed LabCorp's work.

9

critical judicial participants." *Gonzales*, 540 P.3d at 1281; *see also Stepanek*, 940 P.2d at 368; *Hoffler*, 27 P.3d at 373. Defendants do not argue that the processing of paternity tests involves significant independent decision-making. In *Miller*, the Tennessee Court of Appeals found that a court-appointed medical laboratory was not entitled to absolute immunity for conducting paternity testing, in part, because

> the test results are not subject to different interpretation. They either exclude the alleged father or do not. This is directly opposite to the aforementioned cases concerning psychologists or psychiatrists who were appointed by the court to conduct an "evaluation." Here, the tasks of [the medical laboratory] did not lend themselves to "uninhibited and independent decision making."

*Miller*, 942 S.W.2d at 539. The Court agrees with the rationale in *Miller* and finds that there are no allegations in the complaint suggesting that the Arapahoe County Test in this case involved independent decision-making. *See id*. "[A]bsolute immunity is strictly limited to those situations in which the underlying rationale for the doctrine clearly shows that an absolute exception from liability is required." *Awai*, 872 P.2d at 1335 (internal quotations and citations omitted). Accordingly, at the motion to dismiss stage, the Court finds that defendants are not entitled to absolute immunity. The Court therefore denies this portion of defendants' motion.

### B. Breach of Contract Claim

To state a claim for breach of contract under Colorado law, a plaintiff must allege "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) damages to the plaintiff." *Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2716652, at *10 (D. Colo. Mar. 30, 2023); *see also W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (collecting cases).

Defendants argue that plaintiff has failed to establish the third element of his breach of contract claim because he has not plausibly alleged that LabCorp failed to perform the contract. Docket No. 10 at 8. Defendants state that the complaint alleges that the Independent Test was "available for Ms. Woods Gooley and her children to complete," yet Ms. Woods Gooley had "problems accessing the independent genetic tests." *Id*. at 9 (quoting Docket No. 5 at 3). Defendants contend that Mr. Dorman Smith's "own allegations show that Labcorp stood ready and willing to perform the testing—Ms. Woods Gooley's unspecified 'problems accessing' the testing does not allege a breach by Labcorp Defendants but only a failure by a third party to the contract to access the requested services." *Id*. Defendants cite no legal authority in support of this argument. Mr. Dorman Smith responds that defendants denied Ms. Woods Gooley access to a collection facility and did not complete the genetic test that Mr. Dorman Smith paid for. Docket No. 27 at 7.

The Court finds that Mr. Dorman Smith has plausibly alleged that defendants failed to perform the contract. The complaint alleges that Mr. Dorman Smith paid LabCorp $615 for "independent genetic testing" for Ms. Woods Gooley and her twin daughters, yet LabCorp "denied Ms. Woods Gooley access to complete the independent genetic tests." Docket No. 5 at 2, 8. These allegations are sufficient at the motion to dismiss stage to establish the third element. *See Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1204 (D. Colo. 2015) (finding that plaintiff plausibly alleged the third element of a breach of contract claim by stating that defendants "breached this contract by . . . failing to provide services constituting drug and alcohol treatment"). Accordingly, the Court denies this portion of defendants' motion.

11

### C. <u>Fraud Claim</u>

To state a claim for fraud under Colorado law, a plaintiff must establish

> (1) that the defendant made a false representation of material fact; (2) that the one making the representation knew that it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff.

*Moses v. Hovis*, No. 16-cv-01173-PAB-CBS, 2017 WL 4012130, at *5 (D. Colo. Sept. 12, 2017) (quoting *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012)). To state the fifth element, a plaintiff must separately establish "actual reliance, the reasonableness of that reliance, and that the plaintiff's reliance caused [his] damages." *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013).

Furthermore, the heightened pleading standard in Rule 9(b) of the Federal Rules of Civil Procedure requires that, in alleging fraud, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). A complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). The purpose of Rule 9(b) is "to afford a defendant fair notice of a plaintiff's claims and the factual grounds supporting those claims." *Id*. at 1255 (internal quotations, alterations, and citation omitted). "Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

### 1. The Arapahoe County Test

Defendants argue that the Court should dismiss the portion of Mr. Dorman Smith's fraud claim based on the Arapahoe County Test because Mr. Dorman Smith has failed to satisfy the heightened pleading standards under Rule 9(b) and has failed to allege the second, third, and fifth elements of this claim.  Docket No. 10 at 7-8 & n.2; *see also* Docket No. 37 at 5-6.  Defendants maintain that the "only allegedly false statement suggested by [the complaint] is the identification of Plaintiff as the father of Ms. Woods Gooley's children."  Docket No. 10 at 7.  Defendants assert that the complaint fails to allege that defendants had any knowledge that the test results were false.  *Id*.  Defendants argue that Mr. Dorman Smith cannot establish that he was ignorant of the falsity of this representation because Mr. Dorman Smith contends that he "does not know nor has ever been in any relationship with" Ms. Woods Gooley.  *Id*. at 8 (quoting Docket No. 5 at 2).  Finally, defendants contend that the complaint fails to establish that Mr. Dorman Smith relied upon the paternity results.  *Id*.

Mr. Dorman Smith's response asserts new facts regarding his fraud claim that were not included in his complaint.  Mr. Dorman Smith states that the

> Defendants knew, or should have known, that the paternity reports, signed by Dr. Wurzinger, did not comply with LabCorp's legal testing process or the statutory requirements outlined in the [Uniform Parentage Act] for establishing paternity. However, Defendant Dr. Wurzinger was sworn in as an expert witness to testify to the accuracy and legality of the paternity reports at the December 2, 2021, final orders hearing, case number 21-JV-269, but failed to disclose that the paternity reports were not intended to be used as court evidence.

Docket No. 27 at 11.  However, Mr. Dorman Smith cannot amend his "complaint by adding factual allegations in response to [defendants'] motion to dismiss."  *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola v.*

13

*Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint)). Accordingly, the Court will not consider whether these additional allegations state a fraud claim.

The Court finds that the complaint fails to plausibly allege the second, third, and fifth elements of a fraud claim. The complaint states that defendants "generate[d] paternity test results that falsely accused the Plaintiff of being the father of children from a woman he does not know nor has ever been in a relationship with." Docket No. 5 at 9. The complaint states that "Defendants intentionally released genetic test results to the Arapahoe County Child Support Unit to defraud the Court into believing the Plaintiff is the father" of Ms. Woods Gooley's children. *Id*. However, the complaint contains no allegations suggesting that defendants knew the paternity reports were false. Furthermore, the allegations in the complaint refute that Mr. Dorman Smith was "ignorant of the falsity" of the reports, *see Moses*, 2017 WL 4012130, at *5, because Mr. Dorman Smith alleges that he has never been in "any relationship" with Ms. Woods Gooley and strongly disputes that he is the father of the twin girls. Docket No. 5 at 2. Mr. Dorman Smith has therefore failed to plead the second or third elements.

Finally, Mr. Dorman Smith has failed to establish the fifth element because there are no allegations in the complaint suggesting that Mr. Dorman Smith actually relied on any false representation, that any reliance was reasonable, or "that the plaintiff's reliance caused [his] damages." *See Bristol Bay Prods*, 312 P.3d at 1160. The Court finds that, even if Mr. Dorman Smith plausibly alleged that he relied on any false statements in the paternity test, his reliance would not be reasonable because Mr.

Dorman Smith believes that he is not the father of the twin girls.  *See* Docket No. 5 at 2; *see also Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 234 (Colo. 2018) ("A party's reliance on a purported misrepresentation is not justified when the party is aware of or on inquiry notice of the falsity of the representation"); *Goode v. Gaia, Inc.*, No. 20-cv-00742-DDD-KLM, 2022 WL 596292, at *13 (D. Colo. Feb. 28, 2022), *report and recommendation adopted, Goode v. Zavodnick*, 2023 WL 3568126 (D. Colo. Feb. 17, 2023) (finding that plaintiff failed to plead the fifth element of her fraud claim because it "would be nonsensical" for plaintiff to rely on defendant's allegedly false statement that plaintiff was a "stalker" because plaintiff "would know herself whether this is true").

Moreover, Mr. Dorman Smith's complaint fails to satisfy the heightened pleading standard for fraud claims under Rule 9(b).  The complaint fails to set forth with specificity the "time, place and contents of the false representation" or "the identity of the party making the false statements."  *See George*, 833 F.3d at 1254.  Accordingly, the Court grants this portion of defendants' motion and dismisses the portion of Mr. Dorman Smith's fraud claim based on the Arapahoe County Test.

The Court will next consider whether dismissal of the fraud claim should be with or without prejudice.  "Complaints drafted by pro se litigants . . . are not insulated from the rule that dismissal with prejudice is proper for failure to state a claim when 'it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him the opportunity to amend.'"  *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014) (unpublished) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).  The Court finds that dismissal with prejudice is appropriate because it

15

would be futile to give Mr. Dorman Smith the opportunity to amend his complaint.  *See id*.  Even if the Court allowed Mr. Dorman Smith to add the new facts from his response to an amended complaint, *see* Docket No. 27 at 11, these facts do not establish that Mr. Dorman Smith relied on any false representation made by defendants, that his reliance was reasonable, or "that the plaintiff's reliance caused [his] damages."  *See Bristol Bay Prods*, 312 P.3d at 1160.  Accordingly, it would be futile to give Mr. Dorman Smith the opportunity to amend his complaint, and the Court therefore dismisses with prejudice the portion of Mr. Dorman Smith's fraud claim based on the Arapahoe County Test.[7]

### 2. The Independent Test

Defendants argue that the Court should dismiss the portion of Mr. Dorman Smith's fraud claim based on the Independent Test because this claim is a restatement of his breach of contract claim.  Docket No. 10 at 6-7 (citing *Wood v. Houghton Mifflin Harcourt Pub. Co*., 589 F. Supp. 2d 1230, 1250 (D. Colo. 2008); *Kachadoorian v. United Airlines, Inc.*, No. 18-cv-01205-RBJ, 2018 WL 10609655, at *6 (D. Colo. Sept. 12, 2018)).  Mr. Dorman Smith does not respond to this argument.

In Colorado, "[f]raud cannot be predicated upon the mere non-performance of a promise or contractual obligation . . . or upon failure to fulfill an agreement to do something at a future time."  *Kachadoorian*, 2018 WL 10609655, at *6 (quoting *State Bank of Wiley v. States*, 723 P.2d 159, 160 (Colo. App. 1986)); *see also Wood*, 589 F. Supp. 2d at 1250 ("Mere failure to perform a contractual obligation does not constitute

---

[7] Furthermore, Mr. Dorman Smith did not request leave to amend his complaint. "Absent a request to amend, a district court may dismiss the action rather than sua sponte granting leave to amend."  *Young v. Colo. Dep't of Corr*., 2024 WL 1040625, at *10 (10th Cir. Mar. 11, 2024) (collecting cases).

fraud."). That portion of Mr. Dorman Smith's fraud claim based on the Independent Test alleges that "Plaintiff paid the Defendants for legal, independent genetic tests, Defendants denied Ms. Woods Gooley access to complete the independent genetic tests, and there is no evidence that the Defendants refunded Plaintiff for payment." Docket No. 5 at 8-9. This allegation merely reiterates plaintiff's breach of contract claim. *See id*. at 2-3. As a result, this portion of the fraud claim fails as a matter of law. *See Kachadoorian*, 2018 WL 10609655, at *6 (dismissing fraud-related claim because plaintiff's "only plausible argument rests upon mere nonperformance of a promise").

Accordingly, the Court grants this portion of defendants' motion and dismisses the fraud claim with prejudice because the Court finds that it would be futile to give Mr. Dorman Smith the opportunity to amend his complaint. *See Fleming*, 573 F. App'x at 769.

## IV.   CONCLUSION

It is therefore

**ORDERED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 10] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that plaintiff's fraud claim is **DISMISSED with prejudice**.

DATED March 27, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge